```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES                                                     :
                                                                  :
                                                                  :
            -v-                                                   :      20-cr-378 (LJL)
                                                                  :
HERODE CHANCY,                                                    :      OPINION AND ORDER
                                                                  :
                        Defendant.                                :
                                                                  :
------------------------------------------------------------------:
                                                                  X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/2021

LEWIS J. LIMAN, United States District Judge:

Defendant Herode Chancy pleaded guilty on March 12, 2021 to Count One of the six-count Indictment and admitted to the conduct alleged in Count Five. Count One charges that from at least March 2019 through March 2020, Chancy, along with co-defendant Adedayo Ilori and others, conspired to commit wire fraud and mail fraud in violation of 18 U.S.C. §§ 1343 and 1341. The Indictment charges that Chancy, who was then a bank manager working with HSBC Bank, agreed with others to engage in a scheme in which he would and did submit fraudulent business loan applications with the intent not to repay the loans. Sentencing is scheduled for September 8, 2021. The Court held a *Fatico* hearing on July 29, 2021.[1] The following constitutes the Court's findings.

The *Fatico* hearing was prompted by the defense's argument regarding the "central role" in the scheme of the Government's confidential source ("CS"), Nathaniel Gozman ("Gozman"), who the defense suggested instigated the scheme, Dkt No. 71 at 4-5, and the Government's

---

[1] "A 'Fatico' hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence." *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir.1991) (citing *United States v. Fatico*, 603 F.2d 1053 (2d Cir.1979)) (internal quotation marks omitted).

response that Chancy initiated the scheme, Dkt No. 72 at 6.  The *Fatico* hearing was limited to the question of who initiated the scheme.  *See* Dkt Nos. 74, 76.  Although the issue is not relevant to the Sentencing Guidelines calculation, it is relevant to the question of the appropriate sentence under 18 U.S.C. § 3553.  The presentence report (PSR) made no specific findings on the issue.  Although it stated that the confidential source "learned that [Chancy] was interested in working with the CS to create fraudulent loans," PSR ¶ 17, it did not state whether that expression of interest was as a result of an offer by the CS or was unsolicited.

"At sentencing, the government must prove disputed factual allegations by a preponderance of the evidence."  *United States v. Shonubi*, 998 F.2d 84, 87 (2d Cir. 1993).  After considering the testimony and the evidence presented at the hearing and the defense's submission of July 27, 2021 and its attachments, Dkt No. 79, the Court finds that the government failed to satisfy its burden.  The primary evidence supporting the government's contention that Chancy initiated the scheme is FBI Special Agent Terry Kim's testimony that the CS informed him that "Chancy had approached him about fraudulently applying for loans" and that the CS was "surprised" at hearing of the plan from Chancy "because he didn't expect it from Chancy, and they had really only discussed legitimate business up until that point."  Hr'g Tr. 21:6-9; 21:23-22:3 (July 29, 2021 hearing).  Agent Kim testified at the hearing and his testimony generally was credible.  The conversation was not recorded and Chancy disputes that he initiated the scheme.  The government initially intended to offer the testimony of Gozman but withdrew it at the eleventh hour after the Government learned that Gozman intended to invoke the Fifth Amendment in response to questioning concerning three affidavits he executed in 2017 and 2018 which were "facially inconsistent with portions of [Gozman's] guilty plea allocutions" in a prior

case against him and his "2007 trial testimony" in a case in which he appeared as a cooperating witness.  *See* Dkt. No. 78 at 1.

In 2005 and 2006 Gozman pleaded guilty to charges for, among other things, kidnapping and murder in furtherance of a racketeering enterprise, which had he not agreed to cooperate with the government at the time would have carried a mandatory life sentence.  *See* Dkt. No. 79 at 4 & Exs. C, D, and E.  The defense argued that the Court should not receive Agent Kim's testimony regarding what Gozman told him for the truth of that testimony and argued that the Court should cancel the *Fatico* hearing.  The Court rejected that motion.  However, both the government and the defense admit that the hearsay testimony can carry the day and support a finding in the government's favor only if it is supported by additional corroborating evidence.  *See Fatico*, 579 F.2d at 713.

In general, the government's corroborating evidence takes two forms: (1) evidence that Gozman had no motive to falsely incriminate Chancy and to induce him to commit a crime because Gozman had nothing tangible to gain from incriminating another in crime, and (2) evidence of Chancy's statements in recorded conversations after the initial discussions with Gozman about the fraud scheme.  In a recorded conversation on March 14, 2019 with Chancy, the CS—referring to a prior conversation with Chancy—indicated without objection from Chancy that Chancy initiated the scheme.  Chancy can be heard on the call explaining how the scheme would work and telling the CS what he would do to carry out the scheme without any prompting or coaching from the CS.  GX 1T.  In another conversation one month later (on April 10, 2019), the CS stated to Chancy, again without objection, that Chancy had given him the "brief over the phone" and asked him to explain again "what are we doing."  GX 3T.

The corroborating evidence is sufficient for the Court to have received Special Agent Kim's testimony of what Gozman told him as evidence at sentencing. It does not carry the day in satisfying the government's burden of proof. Although Agent Kim testified at trial that the government told Gozman it was highly unlikely that his requests for third-party cooperation credit and an identity change would be honored, the Court cannot foreclose that Gozman was attempting to curry favor with the government by initiating and carrying out his cooperation with the government. In that respect, although Gozman offered information about other suspects, Chancy might have presented himself as an easy target. He was someone whom Gozman knew and who was in financial distress. A scheme to commit loan fraud might have been welcome to him and, regardless of who initiated the scheme, it turns out that the scheme was welcome to him.

The tapes demonstrate that Chancy was an active and creative participant in the scheme. He did not need to be coached by Gozman about how to open up fake accounts and use those fake accounts to commit fraud. Those facts are independently relevant to sentencing, regardless of who first had the idea to commit fraud. But, while they are probative that Chancy initiated the scheme, they ultimately do not convince that it was Chancy who first came up with the idea to commit loan fraud rather than Gozman who first suggested it before Chancy enthusiastically agreed. In particular, there is a distinct possibility that a practiced criminal such as Gozman, who would have known what the government wanted to hear and how to make his conversations with Chancy attractive to the government, would have stated to Chancy things such as "the first time you went at me like this on my phone" and "you gave me the brief over the phone" to create the impression that Chancy initiated the scheme. Hr'g Tr. 27:25-28:1; 36:1-2(July 29, 2021 hearing). Gozman would have known the value of such statements to the government,

4

particularly if Chancy remained silent after they were uttered.  Chancy, who was not aware that Gozman was a CS and the calls were being recorded and was not aware of the significance of the statements, would not necessarily have had reason to object.  The point of the calls was for Chancy to tell Gozman, after the scheme had been initiated, how it was to be carried out.  It would not have mattered particularly whether Chancy had given a brief about how the scheme could be carried out only after Gozman had first suggested it.  In light of that possibility, the Court finds that there is not a preponderance of evidence that it was Chancy, and not Gozman, who initiated the scheme.

Accordingly, the Court rejects for purposes of sentencing that it was Chancy who initiated the fraudulent loan scheme charged in Count One of the Indictment and, for purposes of sentencing, will credit the defense argument that Gozman initiated the scheme and first mentioned to Chancy that he could use his position as a bank manager to commit fraud.

SO ORDERED.

Dated: August 10, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge